STATE v. RABY
2022 OK CR 30
Case Number: S-2022-417
Decided: 12/15/2022
THE STATE OF OKLAHOMA, Appellant v. ASHLEY MEGAN RABY, Appellee
Cite as: 2022 OK CR 30, __ __

 

 

O P I N I O N

MUSSEMAN, JUDGE:

¶1 The State of Oklahoma charged Appellee, Ashley Megan Raby, in the District Court of Cleveland County, Case No. CF-2012-1490, with Count 1: Attempting to Obtain a Controlled Dangerous Substance by Forgery or Fraud, in violation of 63 O.S.2011, § 2-40721 O.S.2011, § 589

¶2 A hearing on Appellee's Motion to Dismiss for Failure to Timely Prosecute was held before the Honorable Thad Balkman, District Judge. At the conclusion of the hearing, Judge Balkman sustained Appellee's motion and dismissed. The State raises a sole proposition of error for review, claiming the trial court erroneously granted Appellee's motion to dismiss for lack of speedy trial. We affirm the trial court's order.

BACKGROUND

¶3 Raby became the subject of a criminal investigation stemming from her alleged activity on July 26, 2012, in Norman, Oklahoma. During this time, Raby and her significant other, Edward Gonzalez, were temporarily residing in a local hotel fulfilling Gonzalez's obligations with his cleaning business. However, Gonzalez testified the couple primarily resided in Prosper, Texas, at the time. Raby was charged by information with the above counts on August 10, 2012. On August 13, 2012, a warrant was issued for Raby's arrest. Raby and Gonzalez would continue to live openly in Texas, eventually moving to the Corpus Christi area. In November 2021, Raby was involved in a traffic stop and arrested on the Oklahoma warrant from 2012.

¶4 The State agreed to recall the bench warrant and schedule an arraignment for January 5, 2022. Raby appeared for the scheduled arraignment and the State agreed to a personal recognizance bond. A preliminary hearing conference was held on February 15, 2022, and the matter was reset for Raby to consider the plea offer provided by the State. On March 4, 2022, Raby asserted her right to speedy trial and filed a motion to dismiss the case.

DISCUSSION

¶5 As an initial matter, we exercise jurisdiction under 22 O.S.2011, § 1053Barker

¶6 Where the trial court has not made any factual findings in addressing a speedy trial claim, or where the claim is raised initially on direct appeal, this Court's review of the claim is de novo, applying the four Barker balancing factors: (1) length of the delay; (2) reason for the delay; (3) the defendant's assertion of her right; and (4) prejudice to the defendant. Lott v. State, 2004 OK CR 2798 P.3d 318Lott, 2004 OK CR 27Cf. Seabolt v. State, 2006 OK CR 50152 P.3d 235de novo the trial court's legal conclusion that the facts. . . establish a constitutional violation." Cf. Johnson v. State, 2012 OK CR 5272 P.3d 720de novo).

¶7 In the present case, while the trial court held a hearing, considered the record, and ultimately decided a speedy trial violation occurred, the trial court did not make any factual findings for deferential review. As a result, our review of the claim is de novo, and we must consider the record and testimony before the trial court, resolving conflicts in evidence, in deciding the ultimate legal conclusion of whether there was a violation of the Appellant's speedy trial right.

A. Length of Delay

¶8 This first question regarding the length of delay is a double inquiry. Doggett v. United States, 505 U.S. 647, 651 (1992). First, we must decide if the delay is sufficient to trigger a speedy trial analysis under the Barker factors. Id. at 651-52. Generally, we will consider any delay beyond one year to trigger review under Barker. Ellis v. State, 2003 OK CR 1876 P.3d 1131

¶9 The State argued below, and appears to argue before this Court, that Raby's speedy trial right only attached in November of 2021 when she was arrested on the warrant, not when the State filed the Information accusing Raby of a crime in August of 2012. The State seems to rely on United States v. Marion, 404 U.S. 307, 320-21 (1971), for support of this proposition. However, the State has plucked this rationale from its context and ignored the immediately preceding statement "that it is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment." Id. at 320. The Supreme Court in Marion was addressing the defendant's claim that the delay between completion of the crime and the return of an indictment, both prior to arrest, violated the Sixth Amendment right to speedy trial. Id. at 313.

¶10 The State's argument is without merit. The filing of the Information on August 10, 2012, started the clock on Raby's speedy trial right. This delay was longer than a year, and thus triggers further analysis under Barker. Ellis, 2003 OK CR 18

¶11 Second, we "must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." Doggett, 505 U.S. at 652 (citing Barker, 407 U.S. at 533-34). Furthermore, "the presumption that pretrial delay has prejudiced the accused intensifies over time." Id. We have already determined that the State's filing of the Information on August 10, 2012, started the speedy trial clock. The next event of importance is the State's agreement to recall the warrant on November 22, 2021, and schedule the matter for arraignment on January 5, 2022. It is this period of time that is the focus of Raby's argument and amounts to approximately nine years and three months. Undoubtedly, this lengthy delay between the Information being filed against Raby and her arrest is extraordinary. See Doggett, 505 U.S. at 657-58 (finding a delay of eight-and-a-half years between indictment and arrest extraordinary). As a result, this factor weighs heavily in favor of Raby.

B. Reason for Delay

¶12 The next step in our analysis is to evaluate the reason for the delay. Essentially, we must ascertain the cause of the delay and assess its reasonableness considering the circumstances of the case. Lott, 2004 OK CR 27Ellis, 2003 OK CR 18

Deliberate delay weighs heavily against the government. Neutral reasons, like negligence or crowded courts, weigh slightly in a defendant's favor, for "ultimate responsibility for such circumstances must rest with the government rather than with the defendant." And a "valid reason, such as a missing witness, should serve to justify appropriate delay."

Ellis, 2003 OK CR 18Barker, 407 U.S. at 531).

¶13 The State argues that Raby returned to Texas, fleeing the jurisdiction, without intent to return to Oklahoma to answer the charges alleged in the Information. It is true, a defendant's contribution to the delay is relevant to a speedy trial analysis. See Jones v. State, 1979 OK CR 45595 P.2d 1344

¶14 The State was in possession of a San Antonio, Texas, address for Raby. This San Antonio address was reproduced on the filed Information and issued warrant for Raby. This contrasts with the speedy trial hearing before the trial court where Raby's significant other, Edward Gonzalez, testified that both Raby and Gonzalez primarily resided in Prosper, Texas. The State relies on this difference and Raby's failure to follow up on her police contact to inquire about charges being filed against her to attribute the lengthy delay to Raby.

¶15 While the difference between the San Antonio and Prosper addresses is potentially relevant, the State failed to develop this at the hearing before the trial court and in the record before this Court. Certainly, if Raby provided a false address in an attempt to thwart police investigation, such a fact would weigh into our consideration and support the State's contention that Raby fled the jurisdiction. However, it is unclear how the State obtained this address, whether it was simply taken from Raby's driver's license, or provided by Raby. In reviewing the record, a different conclusion is supported.

¶16 First, the State provided no evidence that it did anything to apprehend Raby, let alone investigate the provided addresses and driver's license number connected to Raby or conduct other reasonable investigation to account for the lengthy delay. Second, the State agreed to withdraw the warrant, release Raby from custody, and schedule her initial appearance over a month out. The State further agreed to a personal recognizance bond at Raby's arraignment, despite Raby still claiming to live in Texas. These actions by the State evince a belief that Raby was not a flight risk and was not attempting to flee. Third, the State presented no evidence that Raby was aware of the charges against her to support a contention that she was attempting to evade capture.

¶17 Thus, the sole evidence before us is that the State issued a warrant for Raby's arrest in August of 2012 and waited until she was eventually arrested in November of 2021. We are cognizant of the fact that Raby left Oklahoma to return home to Texas, a reasonable action under the facts before us. While this does not amount to fleeing, it must also be considered as relevant when assessing delay. However, such consideration, without more, does not justify the lengthy delay here, resulting in a neutral finding of mere negligence by the State. This factor weighs slightly in Raby's favor.

C. Defendant's Assertion of Speedy Trial Right

¶18 Turning now to the third speedy trial factor, assertion of the right by the accused, Raby moved to dismiss for lack of speedy trial on March 4, 2022. Despite the State's insistence that Raby should have known of the charges pending against her, there is simply nothing in the record to support that argument. As a result, we are left with the unrebutted evidence in the record that Raby was ignorant of the pending charges until her arrest on the warrant in November of 2021. Under these circumstances, Raby "is not to be taxed for invoking [her] speedy trial right only after [her] arrest." Doggett, 505 U.S. at 654. Once aware of the charges, Raby promptly asserted her right to a speedy trial. As a result, this factor weighs in Raby's favor.

D. Prejudice to the Defendant

¶19 The Supreme Court has recognized that unreasonable delay between formal accusation and trial threatens to produce harm through "'oppressive pretrial incarceration,' 'anxiety and concern of the accused,' and 'the possibility that the [accused's] defense will be impaired' by dimming memories and loss of exculpatory evidence." Id. (quoting Barker, 407 U.S. at 532). "Of these, the most serious is the last, because the inability of a defendant adequately to prepare [her] case skews the fairness of the entire system," and it is precisely this prejudice that Raby relies on. Barker, 407 U.S. at 532.

¶20 The State argues that Raby failed to demonstrate any impairment of her defense before the trial court, relying on United States v. Loud Hawk, 474 U.S. 302 (1986). However, the Supreme Court recognized in Doggett that it is precisely this type of prejudice that is the most difficult to show, and

that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify. While such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other Barker [factors], see Loud Hawk [474 U.S.] at 315..., it is part of the mix of relevant facts, and its importance increases with the length of delay.

Doggett, 505 U.S. at 655-56. As a result, "the weight we assign to official negligence compounds over time as the presumption of evidentiary prejudice grows." Id. at 657.

¶21 The extraordinary delay in the present case, and the coordinate presumption of prejudice that arises in light of the State's negligence we found in the second factor, ultimately weighs this factor in Raby's favor when the State has failed to rebut the presumption of prejudice in light of such extreme delay.

E. Conclusion

¶22 In considering the specific facts of this case: the (1) extraordinary delay between the filing of the Information and Raby's arrest; (2) the lack of evidence presented to suggest reasonable actions in bringing Raby to trial, demonstrating negligence on behalf of the State; (3) Raby's timely assertion of her speedy trial rights; and (4) the resulting prejudice, we find Raby's right to a speedy trial was violated.

DECISION

¶23 The ruling of the trial court sustaining Raby's motion to dismiss for lack of speedy trial is AFFIRMED. Pursuant to Rule 3.15, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch.18, App. (2022), the MANDATE is ORDERED issued upon delivery and filing of this decision.

AN APPEAL FROM THE DISTRICT COURT OF CLEVELAND
COUNTY, THE HONORABLE THAD BALKMAN, DISTRICT JUDGE

 

 
 
 
 APPEARANCES IN DISTRICT COURT
 
 
 APPEARANCES ON APPEAL
 
 
 
 
 BEAU DISMUKES
 ANNA DAY
 MICHAEL PATLAN
 ASSISTANT DISTRICT
 ATTORNEYS
 SARAH CONLEY
 LICENSED LEGAL INTERN
 201 S. JONES, STE. 300
 NORMAN, OK 73069
 ATTORNEYS FOR STATE
 
 
 MICHAEL PATLAN
 ASSISTANT DISTRICT ATTORNEY
 201 S. JONES, STE. 300
 NORMAN, OK 73069
 ATTORNEY FOR APPELLANT
 
 
 
 
 DANIEL POND
 ZACK SIMMONS
 SWAIN LAW GROUP
 217 E. MAIN ST.
 NORMAN, OK 73069
 ATTORNEYS FOR DEFENDANT
 
 
 DANIEL POND
 SWAIN LAW GROUP
 217 E. MAIN ST.
 NORMAN, OK 73069
 ATTORNEY FOR APPELLEE
 
 
 

 

OPINION BY: MUSSEMAN, J.
ROWLAND, P.J.: CONCUR
HUDSON, V.P.J.: CONCUR
LUMPKIN, J.: SPECIALLY CONCUR
LEWIS, J.: CONCUR

FOOTNOTES

Barker v. Wingo, 407 U.S. 514 (1972).

 

 

LUMPKIN, JUDGE: SPECIALLY CONCURRING:

¶1 While I continue to have the concerns regarding de novo review as I set out in my separate writing in Seabolt, 2006 OK CR 50de novo review this Court must give deference to the trial court's findings of fact. However, as in this case, where a trial court fails to make those findings, this Court must consider the evidence presented to the trial court to determine if the trial court's decision was clearly erroneous.

¶2 The record in this case reveals the necessity for trial judges to fulfill their responsibility of fact finding in matters of this type to lay the predicate for this Court to apply in reviewing the proper application of the law, which is our limited function.

¶3 This case is analogous to Cheadle v. State, 1988 OK CR 226762 P.2d 995Cheadle, it appears the State made no effort to secure the defendant's presence to effect the prosecution of the charges. However, in analyzing the reason for delay, I do not believe the State's post-arrest agreement to an OR bond for the defendant after withdrawing the arrest warrant is material. The opinion should not be read to chill prosecution efforts to make reasonable accommodations for defendants.

¶4 This case reveals the responsibility of both the State and the trial court in matters of this type. The State must exercise due diligence in seeking the arrest of a defendant once charges are filed, and the trial court must make findings of fact and conclusions of law to allow this Court to fulfill its limited role of appellate review. In this case, the dearth of evidence regarding the State's efforts to secure the arrest of the defendant dictates only one result pursuant to Barker.